UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANIEL DARMSTATTER, | ) | NO. EDCV 05-00079-MAN |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff filed a Complaint on February 3, 2005, seeking review of the denial by the Social Security Commissioner ("Commissioner")[1] of Plaintiff's claim for Supplemental Security Income benefits ("SSI"). The parties filed a Joint Stipulation ("JS") on January 5, 2006, in which: Plaintiff seeks an order reversing the Commissioner's decision and either directing the payment of benefits or remanding the case for

---

[1]    Michael J. Astrue became the Commissioner of the Social Security Administration on February 12, 2007.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael Astrue should be substituted in place of Commissioner Joanne B. Barnhart as the Defendant in this action.  No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1  further appropriate proceedings; and Defendant requests that the
2  Commissioner's decision be affirmed.  On June 22, 2006, following the
3  reassignment of this case, the parties consented to proceed before the
4  undersigned, pursuant to 28 U.S.C. § 636(c).  The Court has taken the
5  parties' JS under submission without oral argument.

7                    **SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

9  _____Plaintiff filed his application for SSI on July 18, 2000.[2]
10 (Administrative Record ("A.R.") 86-87, 251-53.)  Plaintiff claims to
11 have been disabled since July 1, 2000, due to scoliosis, effects of
12 polio, curvature of the spine, high blood pressure, and asthma.[3]  (A.R.
13 96.)  Plaintiff has no past relevant work experience.[4]  (A.R. 109, 197,
14 211.)

17 _____

18         [2]    While Plaintiff's case was pending before the Appeals Council
   and this Court, Plaintiff filed another SSI application on June 4, 2003.
19 (A.R. 190, 251-53.)  The subsequent application was denied initially and
   on reconsideration.  (A.R. 190, 222-25, 227-30.)  The Appeals Council
20 rendered the subsequent claim duplicate and ordered Administrative Law
   Judge ("ALJ") Mason D. Harrell, Jr. to associate the claim files and
21 issue a new decision on the associated claims.  (A.R. 190.)

22         [3]    Plaintiff previously received SSI payments under the SSI
   conversion of January 1, 1974 (*i.e.*, grandfathered in), claiming that he
23 had been disabled since July 4, 1973.  (A.R. 47, 92, 191.)  These
   benefits were suspended on January 1, 1999, when Plaintiff was
24 incarcerated.  (A.R. 92, 191.)  ALJ Harrell noted that Plaintiff did not
   exercise any further appeal rights, and there was no pertinent cause to
25 reopen the prior claim.  (A.R. 191); 20 C.F.R. §§ 416.1487 through
   416.1489.

26         [4]    Although the record shows that Plaintiff has worked as a
27 Salvation Army bell ringer, ALJ Harrell found that, based on Plaintiff's
   earnings record and work history, the past work was of insufficient
28 duration or monetary remuneration to be vocationally relevant.  (A.R.
   196, 247-50, 269.)

                                     2

1    The Commissioner denied Plaintiff's claim for benefits initially
2    and upon reconsideration. (A.R. 59-62, 64-67.)  Thereafter, Plaintiff
3    requested a hearing before an ALJ.  (A.R. 68-69.)  On May 7, 2002,
4    Plaintiff, who was represented by counsel, appeared at a hearing before
5    ALJ Donald F. Rector.  (A.R. 24-56.)  On July 2, 2002, the ALJ denied
6    Plaintiff's SSI claim.  (A.R. 11-22.)  Thereafter, the Appeals Council
7    denied Plaintiff's request for review of the ALJ's decision.  (A.R. 4-
8    6.)  Plaintiff filed a complaint with this Court.
9
10    Pursuant to the parties' March 15, 2004 stipulation, the Appeals
11   Council remanded the case to the ALJ on March 27, 2004.  (A.R. 216-21.)
12   In the stipulation, the parties agreed that:
13
14        On remand, the Administrative Law Judge will be directed to
15        address the weight given to all limitations assessed by Dr.
16        Rose, an examining physician.  If appropriate, the ALJ shall
17        obtain evidence from a vocational expert regarding any
18        vocational impact resulting from Dr. Rose's limitations.  The
19        ALJ shall also consider Plaintiff's application in light of
20        Social Security Ruling 03-1p, which contains the
21        Commissioner's procedures and policy regarding post-polio
22        sequelae.
23
24   (A.R. 216-17.)  Thereafter, a supplemental hearing was held on September
25   8, 2004, at which Plaintiff failed to appear.  (A.R. 198-213.)  On
26   October 29, 2004, the ALJ denied Plaintiff's SSI claim.  (A.R. 187-97.)
27   The Appeals Council denied review upon its own motion.  (JS at 2.)
28

## SUMMARY OF ADMINISTRATIVE DECISION

In his October 29, 2004 written decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (A.R. 196.)  The ALJ determined that Plaintiff had "severe" impairments, taken singularly or in combination, of chronic active hepatitis, increased hepatic iron levels, irritable bowel syndrome with diarrhea and dyspepsia, a history of childhood polio with scoliotic spinal deformity and back pain, asthma, and hypertension. (A.R. 197.)  However, Plaintiff's impairments did not meet or equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (*Id.*)

The ALJ further found that Plaintiff's complaints of disabling pain generally were not credible.  (A.R. 195-97.)  He opined that Plaintiff had the residual functional capacity to perform a significant range of "light" work.  (A.R. 197.)  Specifically, the ALJ found that Plaintiff: could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for six hours in an eight-hour workday; could sit for six hours in an eight-hour workday; could climb stairs; could not climb ladders, ropes, or scaffolds; could not work at heights; could not balance; and required a work environment that was air-conditioned for temperature control and free from excessive smoke, dust, smog, odors, fumes, and other inhaled pollutants.  (A.R. 192, 197.)

The ALJ concluded that Plaintiff had a "limited education," was an "individual closely approaching advanced age," and had no past relevant

4

1    work experience.[5]   (A.R. 109, 197, 211.)   The ALJ found, using Rules
2    202.10[6] and 202.17[7] of the Medical-Vocational Guidelines (the "Grids")
3    as a framework and relying on the testimony of a vocational expert, that
4    Plaintiff could perform work as a fast food worker, bench assembler, or
5    ticket taker/seller.[8]   (A.R. 196-97.)   Accordingly, the ALJ found that
6    Plaintiff was not "disabled" within the meaning of the Social Security
7    Act.   (A.R. 197.)

8

9                              **STANDARD OF REVIEW**

10

11        This Court reviews the Commissioner's decision to determine
12   whether it is free from legal error and supported by substantial
13   evidence.  Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The
14   Commissioner's decision must stand if it is supported by substantial
15   evidence and applies the appropriate legal standards.  Saelee v. Chater,
16   94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a
17   mere scintilla but less than a preponderance -- it is such relevant

18

19   _____

20        [5]    Plaintiff was born on February 24, 1953, and was 51 years old
     at the time of the hearing.  (A.R. 86, 92, 191.)  In addition, Plaintiff
21   has a tenth grade education.  (A.R. 39, 101, 191.)

22        [6]    Rule 202.10 directs that a person who is "closely approaching
     advanced age," with a "limited" education or "at least literate and able
     to communicate in English," and is unskilled, is not disabled.   20
23   C.F.R. Pt. 220, App. 2.

24        [7]    Rule 202.17 directs that a person who is a "younger
     individual," has a "limited or less" education, and is "unskilled," is
25   not disabled.  20 C.F.R. Pt. 220, App. 2.

26        [8]    The vocational expert, Sandra Fioretti, testified that a
     hypothetical individual given Plaintiff's age, education, vocational
27   background, and residual functional capacity could perform work as a
     fast food worker, bench assembler, or ticket taker/seller.  (A.R. 211-
28   12.)

                                      5

1  evidence that a reasonable mind might accept as adequate to support the

2  conclusion." <u>Moncada v. Chater</u>, 60 F.3d 521, 523 (9th Cir. 1995).

3

4      Although this Court cannot substitute its discretion for that of

5  the Commissioner, this Court nonetheless must review the record as a

6  whole, "weighing both the evidence that supports and the evidence that

7  detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y. of</u>

8  <u>Health & Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones</u>

9  <u>v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible

10 for determining credibility, resolving conflicts in medical testimony,

11 and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039

12 (9th Cir. 1995).  This Court must uphold the Commissioner's decision if

13 it is supported by substantial evidence and free from legal error, even

14 when the record reasonably supports more than one rational

15 interpretation of the evidence. *Id.* at 1039-40; *see also* <u>Morgan v.</u>

16 <u>Comm'r. of the Soc. Sec. Admin.</u>, 169 F.3d 595, 599 (9th Cir. 1999);

17 <u>Flaten v. Sec'y. of Health & Human Servs.</u>, 44 F.3d 1453, 1457 (9th Cir.

18 1995).

19

20                              **DISCUSSION**

21

22      Plaintiff alleges two issues: (1) that the ALJ improperly

23 discounted the consultative examining physician's opinion; and (2) that

24 the ALJ failed to fairly and fully develop the record. (JS at 2, 4, 6-

25 7.)

26 ///

27 ///

28 ///

6

**A.   The ALJ Properly Discounted The Consultative Examining Physician's Limitation Of Hourly Breaks**.

Generally, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)(as amended). However, where the examining physician's opinion is uncontradicted, it may be rejected only for "clear and convincing" reasons. *Id.* (citing <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 (9th Cir. 1990)). Where the examining physician's opinion is contradicted, the ALJ may reject it by setting forth specific, legitimate reasons for doing so, which are based on substantial evidence in the record. <u>Batson v. Comm'r of Soc. Sec. Admin.</u>, 359 F.3d 1190, 1195 (9th Cir. 2004).

On August 17, 2000, Dr. Kenneth Rose, a consultative examiner, conducted an internal medicine evaluation. (A.R. 120-25.) An examination of Plaintiff's back revealed severe dextroscoliosis with the presence of multiple surgical scars. (A.R. 122.) Thereafter, Dr. Rose opined that Plaintiff could: lift and carry 20 pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. (A.R. 123.) However, Dr. Rose determined that Plaintiff would need hourly breaks in order to relieve any pain or discomfort. (*Id.*)

The ALJ concurred with Dr. Rose's assessments of Plaintiff's exertional limitations, except for the limitation regarding Plaintiff's need for hourly breaks. In rejecting this limitation, the ALJ stated:

1  I find these limitations are not consistent with [Dr. Rose's]
2  own examination findings and observations as well as
3  [Plaintiff's] own subjective complaints [cit. om.].
4  [Plaintiff] reported to [Dr. Rose] that he had difficulty with
5  "prolonged" bending, lifting, sitting, and walking [cit. om.].
6  He did not state that he required hourly breaks. Furthermore,
7  [Plaintiff] reported his back pain was generally relieved with
8  Motrin [cit. om.]. [Dr. Rose] noted [that Plaintiff] was able
9  to get on and off the examining table without difficulty.
10  Examination findings noted decreased range of motion, but
11  straight leg raise testing was negative at 90 degrees, and
12  Lasegue's sign was negative [cit. om.]. Range of motion in the
13  lower extremities was within normal limits, and on neurological
14  examination, it was noted that motor strength was 5/5 in all
15  extremities and there was good tone bilaterally with good
16  active motion [cit. om.]. Gait was within normal limits and
17  [Plaintiff] was able to stand on heels and toes and perform
18  tandem walking [cit. om.]. There is no evidence that would
19  warrant a more restrictive residual functional capacity than
20  that described herein. Therefore, while I agree with the
21  opinion that [Plaintiff] is limited to light work and I give
22  limited probative weight to his [opinion], there is no evidence
23  to support additional limitations for breaks every hour due to
24  back pain and discomfort. There is no indication that his back
25  pain and discomfort could not be relieved with normal breaks.

26
27  (A.R. 192.)
28

8

1    Plaintiff contends that the ALJ failed to provide specific and
2    legitimate reasons for rejecting Dr. Rose's opinion that Plaintiff
3    needed hourly breaks.  (JS at 3-4.)

4

5    Here, the ALJ correctly found that the record did not support an
6    additional limitation for hourly breaks due to back pain and discomfort.
7    (A.R. 192.)  As explained by the ALJ, Dr. Rose's examination did not
8    indicate that Plaintiff required such frequent breaks.  Specifically,
9    although Dr. Rose noted a decreased range of motion in Plaintiff's back
10   (*i.e.*, forward flexion was 45/90 degrees, retroflexion was 5/30 degrees,
11   and lateral flexion was 20/30 degrees, bilaterally), straight-leg
12   raising at 90 degrees was negative, and Lasegue's sign was similarly
13   negative.  (A.R. 122.)  Dr. Rose also observed that Plaintiff had normal
14   range of motion in his neck, upper extremities (*i.e.*, shoulders, elbows,
15   wrists, and hands), and lower extremities (*i.e.*, hips, knees, and
16   ankles).  (*Id.*)  Furthermore, the neurological examination did not
17   reveal any abnormalities (*i.e.*, good muscle tone bilaterally with good
18   active motion, motor strength of five out of five in all extremities,
19   gait within normal limits, and ability to stand on heels and toes and
20   perform tandem walking).  (A.R. 123.)

21

22   The ALJ appropriately explained that these clinical findings fail
23   to support the conclusion that Plaintiff's pain required him to take
24   hourly breaks.[9]  *See* <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir.
25   2005)("[A]n ALJ need not accept the opinion of a doctor if that opinion

26

27   [9]    In addition, on September 12, 2000, a state agency physician
     opined that Plaintiff did not require hourly breaks.  (A.R. 128.)  The
     physician noted that Dr. Rose's examination was "fairly normal" except
28   for "fairly severe scoliosis."  (A.R. 134.)

is brief, conclusory, and inadequately supported by clinical findings.")(citing <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th Cir. 2001)). In addition, Dr. Rose noted the minimal treatment Plaintiff had received prior to the examination (*i.e.*, occasional Motrin for his pain, and no medical office visits or physical therapy for the previous two years). (A.R. 120.)

The ALJ properly concluded that Dr. Rose's limitation of hourly breaks was based on Plaintiff's subjective pain complaints. Indeed, Dr. Rose's statement regarding Plaintiff's residual functional capacity in his August 17, 2000 report indicates that he based this limitation on Plaintiff's subjective complaints:

> [Plaintiff] has some subjective complaints regarding his scoliosis. Objectively, he has severe deformity. As such, he should only be able to do light work. That would be lifting and carrying 20 lbs. occasionally and 10 lbs. frequently. He would be able to stand and walk 6 hours out of an 8-hour workday, and sit 6 hours out of an 8-hour workday *with breaks hourly to relieve any pain or discomfort*.

(A.R. 123; emphasis added.) Dr. Rose's statement that his assessments were based on his physical examination of Plaintiff and observations during that examination, combined with the lack of objective findings, further suggests that Plaintiff's need for hourly breaks was based on Plaintiff's report of subjective complaints. (A.R. 123.)

In his decision, the ALJ provided a lengthy and proper rejection of

10

1  Plaintiff's subjective pain allegations -- a finding which Plaintiff
2  does not challenge.[10]  (A.R. 195-96); *see* <u>Andrews</u>, 53 F.3d at 1043 ("[A]n
3  opinion of disability premised to a large extent upon the claimant's own
4  accounts of his symptoms and limitations may be disregarded, once those
5  complaints have themselves been properly discounted.")(citing <u>Flaten</u>, 44
6  F.3d at 1463-64).  Accordingly, the ALJ's decision adequately sets forth
7  specific and legitimate reasons for rejecting Dr. Rose's opinion that
8  Plaintiff required hourly breaks.
9
10      In reaching his ultimate conclusion regarding Plaintiff's physical
11 residual functional capacity, the ALJ relied largely upon the opinion of
12 Dr. Samuel Landau, a medical expert.  (A.R. 195.)  At the September 8,
13 2004 hearing, Dr. Landau testified that Plaintiff could:  stand, walk,
14 or sit for six hours in an eight-hour workday; and lift and carry ten
15 pounds frequently and 20 pounds occasionally.  (A.R. 210.)  Regarding
16 Plaintiff's non-exertional limitations, Dr. Landau found that, although
17 Plaintiff could climb stairs, he could not climb ladders, work at
18 heights, or balance.  (*Id.*)  In addition, Dr. Landau opined that
19 Plaintiff's work environment should be air-conditioned for temperature
20 control and free of excessive smoke, dust, smog, odors, fumes, and other
21 inhaled pollutants.  (*Id.*)
22
23

24      [10]    As Plaintiff elected not to attend the September 8, 2004
   hearing, the ALJ discounted the complaints alleged by Plaintiff in the
25 May 7, 2002 hearing.  (A.R. 27-43, 195-96.)  In discounting Plaintiff's
   subjective allegations, the ALJ reasoned that Plaintiff's medical
26 treatment had been "routine and conservative."  (A.R. 195.)    In
   addition, the ALJ noted that Plaintiff's symptoms were not supported by
27 objective evidence.  (*Id.*)  Finally, the ALJ commented that Plaintiff's
   assertion of a dependent lifestyle appeared to be a lifestyle choice and
28 not due to any established impairment.  (A.R. 195-96.)

1    Although Dr. Landau partially concurred with Dr. Rose's opinion, he
2    did not adopt Dr. Rose's opinion that Plaintiff required hourly breaks.
3    (A.R. 205.)  Dr. Landau reasoned that "there was no indication in the
4    rest of the record that [Plaintiff] was having problems of that nature
5    that would require such frequent breaks." (*Id.*)  Specifically, Dr.
6    Landau noted that a chest x-ray showed dextroscoliosis, which was the
7    result of childhood polio, and the record revealed Plaintiff's
8    complaints of back pain.  (A.R. 150, 203, 206-07, 311, 315, 340.)
9    However, Dr. Landau asserted that the record did not show that Plaintiff
10   had a significant back problem.  (A.R. 205.)  In fact, the progress
11   notes concerning Plaintiff's back pain primarily indicated that
12   Plaintiff had returned to the clinic for refills on his pain medication.
13   (A.R. 168, 324, 326, 330, 386-89.)  Plaintiff's treating physicians
14   never recommended any other intervention, such as surgery or physical
15   therapy.  Furthermore, an electrodiagnostic study returned negative
16   results, indicating that Plaintiff's back pain did not arise from
17   radiculopathy (*i.e.*, disease of the spinal nerve roots).  (A.R. 207,
18   383.)

19

20   Thus, Dr. Landau's opinion was based on Dr. Rose's clinical
21   findings, as well as the treatment notes from Plaintiff's treating
22   physicians.  Moreover, Dr. Landau's opinion that Plaintiff did not need
23   hourly breaks was consistent with the opinions of four state agency
24   physicians.  (A.R. 127-35, 369-76.)  Accordingly, his opinion regarding
25   Plaintiff's residual functional capacity constitutes substantial
26   evidence, and the ALJ's reliance upon it was proper.  *See* <u>Morgan</u>, 169
27   F.3d at 600 ("Opinions of a nonexamining, testifying medical advisor may
28   serve as substantial evidence when they are supported by other evidence

1  in the record and are consistent with it.")(citing <u>Andrews</u>, 53 F.3d at

2  1041).

3

4      And, even if a limitation requiring hourly breaks had been included

5  in the ALJ's residual functional capacity finding, the ultimate

6  determination regarding Plaintiff's disability would have remained the

7  same. At the September 8, 2004 hearing, the ALJ posed a hypothetical

8  question to the vocational expert which included the limitations found

9  by Dr. Landau. (A.R. 211-12.) In response, the vocational expert

10  testified that the hypothetical individual could perform work as a fast

11  food worker, bench assembler, or ticket taker/seller. (A.R. 212.)

12  Thereafter, the ALJ proposed another hypothetical question which, in

13  addition to those limitations, included the requirement of "break[s] for

14  two or three minutes every hour to stand and stretch." (*Id.*) The

15  vocational expert testified that this additional limitation would not

16  impact the individual's ability to perform the same occupations. (*Id.*)

17

18      Because the vocational expert's testimony shows that Plaintiff

19  would have been able to perform work in the national economy even with

20  the additional limitation of hourly breaks, the error in not including

21  this limitation in the ALJ's residual functional capacity finding, if

22  any, would be harmless in accordance with substantial Ninth Circuit

23  precedent. <u>Stout v. Comm'r of Soc. Sec. Admin.</u>, 454 F.3d 1050, 1054-55

24  (9th Cir. 2006)(discussing Ninth Circuit cases applying the harmless

25  error doctrine in the context of Social Security claims); <u>Brawner v.</u>

26  <u>Secretary of Health & Hum. Serv.</u>, 839 F.2d 432, 434 (9th Cir. 1988)(any

27  error in ALJ's classifying a claimant's past relevant work as "light"

28  was harmless, because the ALJ also found that claimant could perform

other light work).  *See also* <u>Burch v. Barnhart</u>, 400 F.3d 676, 682 (9th Cir. 2005)(although ALJ erred in failing to consider the claimant's obesity at step two of the sequential analysis, the error did not warrant reversal, because the claimant's obesity did not meet or equal a listing at step three and was considered by the ALJ at step five in assessing the claimant's RFC); <u>Batson</u>, 359 F.3d at 1195-97 (finding an ALJ error that did not negate the validity of the ALJ's ultimate conclusion to be harmless for, even if the ALJ erroneously characterized the claimant's statements regarding his limitations, in the light of the reasons given by the ALJ for finding the claimant to be not credible and for the RFC found, and the objective medical evidence on which he relied, the error was harmless); <u>Curry v. Sullivan</u>, 925 F.2d 1127, 1131 (9th Cir. 1991)(because the ALJ's erroneous factual conclusions were "immaterial" to his ultimate finding of non-disability, the error was harmless).

Accordingly, Plaintiff's argument regarding the ALJ's error in discounting the examining physician's opinion is rejected.

**B.   <u>The ALJ Properly Developed The Record</u>.**

The ALJ in a social security case has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered, even when the claimant is represented, as in this case.  <u>Tonapetyan</u>, 242 F.3d at 1150 (citing <u>Smolen</u>, 80 F.3d at 1288); <u>Crane v. Shalala</u>, 76 F.3d 251, 255 (9th Cir. 1996)(citing <u>Brown v. Heckler</u>, 713 F.2d 441, 443 (9th Cir. 1983)).  However, "[a]n ALJ's duty to develop the record further is triggered only when there is

14

1  ambiguous evidence or when the record is inadequate to allow for proper
2  evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60
3  (9th Cir. 2001)(citing Tonapetyan, 242 F.3d at 1150).

5       As one of the reasons for giving Dr. Rose's opinion limited
6  probative weight, the ALJ noted that Plaintiff "did not state that he
7  required hourly breaks." (A.R. 192.)  However, Plaintiff elected not to
8  attend the September 8, 2004 hearing, and therefore, Plaintiff was never
9  asked whether such a limitation was required. (A.R. 200-01.)  The ALJ
10 instead relied on the opinion of Dr. Landau, who testified that "there
11 was no indication in the rest of the record that [Plaintiff] was having
12 problems of that nature that would require such frequent breaks." (A.R.
13 205.)  Plaintiff contends that the ALJ should have sent an interrogatory
14 to Plaintiff, asking whether he required hourly breaks. (JS at 6-7.)

16      Contrary to Plaintiff's contention, the ALJ properly satisfied his
17 duty to fully and fairly develop the record.  First, Plaintiff was on
18 notice that the issue of hourly breaks would be considered at the
19 hearing, as it was a basis for remand by this Court and the Appeals
20 Council. (A.R. 219.)  In addition, the ALJ properly notified Plaintiff
21 of the pending September 8, 2004 hearing. (A.R. 243.)  Furthermore, the
22 ALJ held the record open after the hearing to give Plaintiff additional
23 time to contact his attorney and testify.[11] (A.R. 200-01.)  Despite the
24 ALJ's effort to allow Plaintiff to testify as to his need for hourly
25 breaks, Plaintiff inexplicably failed to do so.

---

28       [11]  Plaintiff's counsel testified that he had left a message and
sent a letter, but Plaintiff did not respond to either. (A.R. 220.)

15

1    Moreover, Plaintiff has not shown any true ambiguity or inadequacy
2  in the record.  Any inconsistencies in Dr. Rose's findings (*i.e.*, need
3  for hourly breaks) were properly considered by the ALJ in his evaluation
4  of Dr. Rose's opinion.  (A.R. 192, 195.)  There was no uncertainty in
5  the record that would have required further development.  Plaintiff's
6  medical record, Dr. Rose's examination, and Dr. Landau's expert
7  testimony sufficed to present a full and clear picture of Plaintiff's
8  impairments.  Therefore, the ALJ was not required to further develop the
9  record.  *See* <u>Mayes</u>, 276 F.3d at 459-60.

10

11    In addition, Ms. Fioretti testified that a hypothetical individual
12  with a residual functional capacity encompassing the limitations
13  determined by Drs. Rose and Landau (*e.g.*, requirement of hourly position
14  changes and stretching) would be able to perform work that exists in
15  significant numbers in the national economy.  Therefore, any error was
16  harmless.  *See* <u>Curry</u>, 925 F.2d at 1131.

17

18    Accordingly, Plaintiff's argument that the ALJ failed to fully and
19  fairly develop the record is rejected.

20

21                              **CONCLUSION**

22

23    Accordingly, for the reasons stated above, IT IS ORDERED that the
24  decision of the Commissioner is AFFIRMED and that the above-captioned
25  action is dismissed with prejudice.

26

27    IT IS FURTHER ORDERED that the Clerk of the Court shall serve
28  copies of this Memorandum Opinion and Order and the Judgment on counsel

                                   16

1    for Plaintiff and for Defendant.

2

3          **LET JUDGMENT BE ENTERED ACCORDINGLY.**

4

5    DATED:  March 12, 2007

6                                            /s/
                                      MARGARET A. NAGLE
7    _____    UNITED STATES MAGISTRATE JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    17